UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HUMAN SERVICES ASSOCIATES, LLC,

    Defendant.
_____/

Hon. Robert J. Jonker

Case No. 1:16-cr-00018-RJJ-3

**MEMORANDUM OPINION**

This matter is before the Court on defendants Tapera Albert Chiwocha, Sr., and Callista Suzena Chiwocha's requests to appoint counsel for co-defendant Human Services Associates, LLC ("HSA"). The government supports these requests, and it has agreed to release seized HSA assets to be used by the Court to compensate appointed counsel.

For the reasons stated herein, the Court will grant the Chiwochas' requests and appoint counsel to represent HSA. Such appointment is contingent upon the government's release of seized funds sufficient to compensate counsel at a rate, and under the same terms and conditions, as provided by the Criminal Justice Act, 18 U.S.C. § 3006A. The release of funds has been approved by the Court, pursuant to the parties' stipulation, in *United States v. $77,773.46 in Funds from Citizens Bank Account #4536135256, et al.*, Case No. 1:12-cv-495 (J. Maloney) (Joint Stipulation, ECF No. 44; Oct. 21, 2016, Order, ECF No. 45).

**Procedural History**

The procedural history behind the pending request for appointment of counsel for HSA is both unusual and somewhat complex. It warrants some explication.

1. The Parallel Civil Forfeiture Action

On May 16, 2012, the United States filed a civil forfeiture action *in rem* seeking the forfeiture of, among other things, funds in various bank accounts, which the government seized and which the government alleges was derived from criminal activity. (Verified Complaint, *United States v. $77,773.46 in Funds from Citizens Bank Account #4536135256, et al.*, Case No. 1:12-cv-495, ECF No. 1 (J. Maloney)). Among the bank accounts at issue in the civil forfeiture action are those held by Tapera Chiwocha, Callista Chiwocha, and HSA. The allegations of criminal activity are essentially the same as those included in the pending criminal case: conspiracy to defraud the Internal Revenue Service through the filing of fraudulent tax returns and money laundering. (*Id.*, ECF No. 1, PageID.3-5, 7).

Tapera Chiwocha, Sr., and Callista Chiwocha are each represented in the civil matter by his or her respective court-appointed counsel in the criminal case. The docket indicates that an attorney represents HSA in the civil matter, although it is unclear at this juncture the status of the attorney's relationship with HSA. The civil action has been stayed since February 23, 2016, pending resolution of the pending criminal case. (Order, Case No. 1:12-cv-495, ECF No. 42).

2. <u>The Criminal Prosecution</u>

Defendants Tapera Chiwocha, Sr., and Callista Chiwocha had been under federal investigation for some time prior to being charged in this case. They were on notice of the potential for criminal charges by May 16, 2012, the date the government filed the civil forfeiture action. (*See* Complaint, Case No. 1:12-cv-495, ECF No. 42; June 21, 2012, Claim of Interest of Tapera Chiwocha, Sr., ECF No. 8; June 25, 2012, Claim of Interest of Callista Chiwocha, ECF No. 9). In March 2014, the government notified the Chiwochas that they were targets of a criminal investigation into allegations of fraud against the government. (ECF No. 1 (restricted access)). The Court granted their respective requests for appointment of counsel. (ECF No. 2).

On January 27, 2016, the grand jury returned an indictment against them, charging each with one count of conspiracy to defraud the government through the filing of false tax returns, four counts of making false claims to the government, and four counts of converting government property. (ECF No. 7). The conspiracy count alleges, among other things, that, in February 2011, Tapera Chiwocha, Sr., "filed articles of incorporation with the State of Michigan for 'Human Services Associates, LLC'" (*id.*, Overt Act 3, PageID.20); that the Chiwochas together opened several business bank accounts under the name HSA (*id.*, Overt Acts 6, 8, 11, PageID.21-22); and that they used these accounts for depositing fraudulently-obtained tax refunds (*id.*, Overt Acts 12, 17, 18, 20, 21 PageID.22-24).

Each of the Chiwochas was arraigned on the respective charges against them on February 4, 2016, and each was released on bond. (Minutes, ECF No. 19, 23). Trial was set for March 8, 2016. (Feb. 8, 2016, Order, ECF No. 26). The Court granted the

Chiwochas' motion to continue the trial date due to the volume of discovery produced by the government, rescheduling the trial for September 26, 2016. (Feb. 25, 2016, Order, ECF No. 39). On March 24, 2016, the case was reassigned to Chief Judge Robert J. Jonker, pursuant to the district's related case rule, LCRR 56.5(d)(iii)(A)(5), and trial was rescheduled to September 13, 2016. (Admin. Order, ECF No. 43; March 24, 2016, Order, ECF No. 45).

On May 25, 2016, the grand jury returned a superseding indictment. (ECF No. 55). HSA was added as a defendant to the conspiracy charge (Count 1). (*Id.*, PageID.188). The grand jury also added aggravated identity theft charges (Counts 10-14) and money laundering charges (Counts 15-29). (*Id.*, PageID.209-31). HSA was named in all but two of the money laundering charges (Counts 15-27). (*Id.*, PageID.209-29). HSA was also included in the two forfeiture allegations. (*Id.*, PageID.232-37).

On June 1, 2016, the Chiwochas were each arraigned on the charges in the superseding indictment. (Minutes, ECF No. 57, 58). During the arraignment, the government requested that counsel be appointed to represent HSA, which request was joined by counsel for Tapera Chiwocha, Sr.[1] The Court granted this request from the bench, despite its expressed concerns as to whether HSA had a Sixth Amendment right to appointment of counsel. (*See* Minutes, ECF No. 57, 58; *see also* June 2, 2016, Order, ECF No. 59, PageID.241).

---

[1]These proceedings were audio-recorded, and the recordings are retained by the Court. The recordings may be transcribed upon request.

The Court vacated the order of appointment of counsel the next day, after learning the Guide to Judiciary Policy precludes appointment of counsel under the Criminal Justice Act (CJA) for corporate defendants. (*See* ECF No. 59, PageID.241-42 (citing 7A Guide to Judiciary Policy, Ch. 2, § 210.20.50 (internet link omitted)). The Court ordered the government and the Federal Public Defender to file briefs addressing five issues: (1) whether a Michigan limited liability company (LLC) should be treated as a corporation for purposes of the Sixth Amendment right to counsel; (2) whether an LLC has a Sixth Amendment right to Court-appointed counsel, assuming it is indigent; (3) whether an LLC has a statutory right under the CJA to the appointment of counsel as a "financially eligible person," 18 U.S.C. § 3006A(a)(1); (4) whether the Court has inherent authority to appoint counsel for an LLC, assuming the LLC has neither a constitutional or statutory right to one; and (5) whether there is any source of funding to compensate appointed counsel, absent authority under the CJA. (ECF No. 59, PageID.242).

The Federal Public Defender and the government each filed their respective briefs on June 17, 2016. (ECF No. 63, 64). Counsel for Tapera Chiwocha, Sr., filed a brief on June 20, 2016, addressing these issues.[2] (ECF No. 65). A hearing was conducted on June 22, 2016, at which counsel for all three defendants were present, along with the Federal Public Defender. (Minutes, ECF No. 70).

On June 24, 2016, the Court issued a summons to HSA to appear on July 14, 2016, and answer the charges in the superseding indictment. (ECF No. 71). Based on

---

[2]The Court's June 2, 2016, order invited, but did not require, briefing from defendants Tapera Chiwocha, Sr., and Callista Chiwocha. (ECF No. 59, PageID.243).

information provided by counsel during the June 22, 2016, hearing, the Court addressed the HSA summons to Callista Chiwocha as its registered agent. (*Id.*, PageID.336).

The Court conducted an initial appearance for HSA on July 14, 2016. (Minutes, ECF No. 82). Callista Chiwocha appeared, along with her court-appointed counsel. (*Id.*, PageID.372). Ms. Chiwocha, through counsel, requested that the Court appoint a lawyer for HSA, attesting to the fact that HSA lacked the financial resources to retain counsel. (*See* July 14, 2014, Order, ECF No. 83, PageID.373-74). Callista Chiwocha's counsel advised the Court that Ms. Chiwocha had the legal authority to make decisions for, and to bind, HSA. (*See id.*, PageID.374). Counsel for the United States concurred in this assessment based on his review of documents obtained by the government. (*See id.* (colloquy available through audio recording of July 14, 2016, hearing)). Counsel for Tapera Chiwocha, Sr., challenged Callista Chiwocha's authority to act on behalf of HSA, however, asserting that Mr. Chiwocha alone had such authority. (*See id.*).

It being necessary that the Court ascertain who has the authority to make decisions on behalf of HSA for the purpose requesting the appointment of counsel, the Court ordered briefing on the issue. (ECF No. 83, PageID.374-75). Counsel for Tapera Chiwocha, Sr., filed a brief on July 28, 2016. (ECF No. 88). Counsel for Callista Chiwocha filed a brief on August 2, 2016, and an "addendum" to the brief on August 9, 2016. (ECF No. 93, 96). The United States filed its responsive brief on August 16, 2016. (ECF No. 97).

In response to the Court's directive (*see* July 14, 2016, Order, ECF No. 83, PageID.373), the United States provided notice of its willingness to release seized HSA assets "for the sole purpose of providing funding to compensate court-appointed counsel

at the same rate set by, and under the same terms and conditions provided in the Criminal Justice Act." (ECF No. 101, PageID.428). The government conditioned this offer on three judicial findings: (1) HSA's indigency, (2) a lack of judicial resources to pay counsel, and (3) an unwillingness to appoint counsel on a *pro bono* basis. (*Id.*). The government has seized a total of $269,057.34 in funds from five of HSA's bank accounts. (*See id.*, PageID.429).

    3.    <u>Defendant Tapera Chiwocha's Competency to Stand Trial</u>

Defendant Tapera Chiwocha's participation in the proceedings in this case was interrupted by his May 16, 2016, motion for a hearing to determine his competency to stand trial, a motion to which the government concurred. (ECF No. 50, 52). The Court granted that motion on July 6, 2016, ordering a psychological evaluation to be completed. (ECF No. 77). Mr. Chiwocha was transported by the U.S. Marshal to a Bureau of Prison facility to conduct the competency evaluation. (July 8, 2016, Order, ECF No. 79).

On October 4, 2016, after Tapera Chiwocha's return to the district, the Court conducted a competency hearing, determining that Mr. Chiwocha is competent to stand trial. (Oct. 5, 2016, Order, ECF No. 113). During the pendency of the issue of his competency, Tapera Chiwocha, Sr., was unable to participate in, much less express his views on, the issues relating to Callista Chiwocha's July 14, 2016, request for appointment of counsel for HSA.

    4.    <u>The October 13, 2016, Status Conference and Arraignment of HSA</u>

In light of the determination of Tapera Chiwocha's competency, the Court conducted a status conference on October 13, 2016, to address some remaining issues. (Minutes,

ECF No. 119).  Primary among them was Tapera Chiwocha's position with respect to the request for court-appointed counsel for HSA.  Continuing to maintain his position that he alone has authority to act on behalf of HSA, Tapera Chiwocha, acting through counsel, formally requested that counsel be appointed, and he attested to HSA's indigency in light of the government's seizure of its assets (colloquy available through audio recording of October 13, 2016, hearing).  This resolved the issue of who had authority to act on HSA's behalf in requesting counsel, as both individuals with any arguable claim to such authority had joined in the request.

During the status conference, the Court announced its intention to appoint counsel to represent HSA and, utilizing seized HSA assets the government agreed to release, order HSA to pay for appointed counsel at a rate set by the Criminal Justice Act.  Tapera Chiwocha agreed to those terms.  Callista Chiwocha "deferred" to Mr. Chiwocha's decision to request appointed counsel under the terms announced by the Court, and she waived any right to assert an interest in any funds used to pay for HSA's court-appointed counsel.

At the conclusion of the status conference, the Court provisionally and contingently appointed John J. Frawley, who had been recommended by the Federal Public Defender, as counsel for HSA.  The oral order was reduced to writing later that day.  (*See* Oct. 13, 2016, Order, ECF No. 123).  The Court ordered the parties to file a joint stipulation in the parallel civil forfeiture action (*United States v. $77,773.46 in Funds from Citizen's Bank Account #4536135256, et al.*, Case No. 1:12-cv-495), seeking the Court's approval in that case for the release of assets to be used to fund the appointment of counsel for HSA.  (ECF

No. 123, PageID.483). The stipulation was approved by the Court today. (Case No. 1:12-cv-495, ECF No. 45).

On October 13, 2016, HSA was arraigned on the charges in the superseding indictment, through appointed counsel. (Amended Minutes, ECF No. 121). HSA stood mute to the charges, and the Court entered a not guilty plea on its behalf. (*See id.*).

## DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the *accused* shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI (emphasis supplied). The term "accused" is not limited to natural persons, but extends to artificial entities, such as corporations and limited liability companies.[3] *See United States v. NHML, Inc.*, 225 F.3d 660, 2000 WL 420683, *14 (6th Cir. April 12, 2000 (unpublished)) ("A corporation does have a right to counsel which attaches after the corporation has been indicted." (citing, inter alia, *United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 743 (3rd Cir. 1979)); *United States v. Unimex, Inc.*, 991

---

[3]The Michigan legislature defined a limited liability company is "an entity that is an unincorporated association having 2 or more members and is formed under this act." M.C.L. § 450.4102(2)(I). Under Michigan law, "[a] limited liability company is designed to achieve the best of all worlds for some persons – the limited liability of a corporation plus the favorable tax treatment of a partnership." *Int'l Flavors and Textures, LLC v. Gardner*, 966 F. Supp. 552, 553 (W.D. Mich. 1997); *see also Hills and Dales Gen. Hosp. v. Pantig*, 812 N.W.2d 793, 797, 295 Mich. App. 14, 20-21 (Mich. Ct. App. 2011) ("The rules respecting the corporate form apply equally to limited liability corporations." (citation omitted)). While there are some legal distinctions between a corporation and an LLC, *see id.* at 553-54, none provide a valid basis to treat an LLC differently than a corporation for purposes of the issues addressed in this opinion. *See United States v. Burk*, No. EP-14-CR-240, 2014 WL 2800759 (W.D. Tex, June 18, 2014) (analyzing an LLC's right to appointment of counsel under the Sixth Amendment and the Criminal Justice Act).

F.2d 546, 550 (9th Cir. 1993) ("[C]orporations have a right to counsel . . . ."); *United States v. Thevis*, 665 F.2d 616, 645 n.35 (5th Cir. 1982) ("The [S]ixth [A]mendment guarantees apply generally to an 'accused'; a corporation which is a defendant at trial is an 'accused' within the meaning of the amendment and enjoys the protection afforded by it."); *see also United States v. Burk*, No. EP-14-CR-240, 2014 WL 2800759, *2 (W.D. Tex, June 18, 2014) ("[I]t is generally understood that 'the [Sixth Amendment's] guarantee of effective assistance of counsel applies to corporate defendants' as well as individuals." (quoting *Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d at 743)). Accordingly, the Court is satisfied that HSA enjoys a Sixth Amendment right to counsel.

The more difficult questions concern whether HSA has a Sixth Amendment right to appointment of counsel, and whether the Court can fund the appointment of counsel under the Criminal Justice Act. These issues appear to be matters of first impression in the Sixth Circuit. Several courts in other circuits have addressed them, however, concluding in the negative. This Court agrees.

    1.   <u>The Sixth Amendment Right to the Appointment of Counsel</u>

The parameters of a corporate entity's Sixth Amendment right to counsel is not coextensive with that of a natural person. The primary distinction is found in the fact that, unlike a natural person, a corporation does not face the potential loss of life or liberty.

In *Johnson v. Zerbst*, the Supreme Court construed the Sixth Amendment's right to counsel to require court appointment for indigent defendants faced with the loss of life or liberty. 304 U.S. 458 (1938). The Court explained: "The Sixth Amendment withholds

from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his *life or liberty* unless he has or waives the assistance of counsel." *Id.* at 463 (emphasis supplied). The Court, acknowledging that the right to counsel was "fundamental," extended the *Zerbst* holding to the states through the Fourteenth Amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963).

In *Scott v. Illinois*, the Supreme Court explicitly limited the Sixth Amendment right to appointed counsel to defendants facing potential imprisonment. 440 U.S. 367, 373-74 (1979). "[W]e believe that the central premise of *Argersinger* – that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment – is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Id.*[4]

HSA is not subject to potential loss of liberty. Unlike its co-defendants – Tapera Chiwocha, Sr., and Callista Chiwocha – it is not facing the prospect of imprisonment if convicted of the charges in the superseding indictment. Accordingly, it has no Sixth Amendment right to the appointment of counsel. *See Scott v. Illinois*, 440 U.S. at 373-74; *see also Lassiter v. Dep't of Soc. Servs. of Durham County, N.C.*, 452 U.S. 18, 25 (1981) ("The pre-eminent generalization that emerges from this Court's precedents on an

---

[4]In *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), the Supreme Court held that, absent a knowing and intelligent waiver, no person may be imprisoned for any offense, including petty offenses punishable by imprisonment for less than six months, unless the person was represented by counsel at trial. In *Scott*, the Court noted that it granted certiorari "to resolve a conflict among state and lower federal courts regarding the proper application of [its] decision in *Argersinger v. Hamlin*." *Scott*, 440 U.S. at 368.

indigent's right to appointed counsel is that such right has been recognized to exist only where the litigant may lose his *physical* liberty if he loses the litigation.") (emphasis supplied).

2. The Criminal Justice Act

Having determined that HSA does not enjoy a Sixth Amendment right to counsel, the Court must turn to the question of whether Congress has provided a statutory right to appointment of counsel through the Criminal Justice Act (CJA). The CJA provides, in pertinent part, that "[r]epresentation shall be provided for any financially eligible *person*." 18 U.S.C. § 3006A(a)(1)(A)-(J) (emphasis supplied). Accordingly, the Court must determine whether an artificial entity, such as a limited liability company, is a "person" under the CJA.[5]

For this determination, the Court must engage in a contextual analysis of the CJA's use of the term "person." The Dictionary Act, provides that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise, . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. "'Context,' as used in 1 U.S.C. § 1, means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts, and this is simply an instance of the word's ordinary

---

[5]The legislative history to the CJA indicates that Congress did not intend to extend the statutory benefits to artificial entities. *See United States v. Burk*, No. EP-14-CR-240-DCG, 2014 WL 2800759, *5-6 (W.D. Tex. June 18, 2014) (providing a useful explanation of the legislative history of the CJA with respect to congressional intent to limit its application to natural persons).

meaning." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993).

In *Unimex*, the Ninth Circuit held that the context of the use of the term "person" within the CJA indicates that Congress did not intend to extend the statute's benefits to corporations. *See* 991 F.2d at 549. The court looked to the CJA's list of ten categories of persons eligible for appointed counsel, two of which were defined by what the court described as "catch-all" clauses: a person "entitled to appointment of counsel under the sixth amendment to the constitution," and one who "faces loss of liberty in a case and Federal law requires appointment of counsel." 18 U.S.C. 3006A(a)(1)(H), (I). Inasmuch as corporations cannot be included in either of the catch-all categories, the Ninth Circuit concluded that these artificial entities were not entitled to appointed counsel under the CJA. *See Unimex*, 991 F.2d at 549-50 (citing *United States v. Hoskins*, 639 F. Supp. 512 (W.D.N.Y. 1986). "Thus, corporations have a right to counsel, but no right to appointed counsel, even if they cannot afford to retain their own." *Unimex*, 991 F.2d at 550.

As the Ninth Circuit noted, authority on this issue "is scarce." *Id.* But to the extent courts have addressed it, they have unanimously agreed that the benefits of the CJA are limited to natural persons. *See United States v. Hartsell*, 127 F.3d 343, 350 (4th Cir. 1997) ("[N]either the Sixth Amendment . . . nor the Criminal Justice Act provides that counsel must be appointed, at public expense, to represent a corporation in criminal proceedings." (citing *Unimex*, 991 F.2d at 550)); *United States v. Rocky Mountain Corp.*, 746 F. Supp.2d 790, 800 (W.D. Va. 2010) ("Congress has not provided for the expenditure of Criminal Justice Act funds for the defense of corporations." (citing *Hartsell*, 127 F.3d at 350));

*United States v. Rivera*, 912 F. Supp. 634, 637 (D.P.R. 1996) ("As it can be clearly determined, [the CJA] provides for the appointment of counsel and payment of legal representation on behalf of 'persons' not deemed to be corporate defendants."); *United States v. Burk*, 2014 WL 2800759, at *7-8 (citing three "contextual features" indicating a congressional intent to limit the appointment of counsel under the CJA to natural persons); *United States v. JB Tax Prof'l Serv's, Inc.*, No. 13-127, 2013 WL 6004047, *1 (E.D. La. Nov. 13, 2013) ("There is general consensus that CJA funds are not available to fund the defense of an indigent corporation." (citations omitted)); *see also In re Grand Jury Proceedings*, 469 F.3d 24, 26 (1st Cir. 2006) (Noting that the Federal Defender's Office, as "a creature of the [CJA] lacks the authority to represent corporate clients." (citing *Hartsell*, 127 F.3d at 350; *Unimex*, 991 F.2d at 550; *Rivera*, 912 F. Supp at 637-38)); *United States v. Chan*, No. 14-cr-3662, 2015 WL 545544, *2 (S.D. Ca. Feb. 9, 2015) (denying appeal of magistrate judge's decision that a corporation cannot be appointed counsel under the CJA, noting that the decision was "consistent with the law, and reasonably based"). This Court sees no basis to deviate from the holdings cited herein.[6]

In a somewhat analogous context, the Supreme Court held that only a "natural person" may qualify for *in forma pauperis* benefits under 28 U.S.C. § 1915(a). *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. at 201. In that case,

---

[6]As one court noted: "Congress and the courts perceive little or no constitutional value to be served in providing counsel to an 'indigent' corporation. Corporate welfare is hardly a fundamental value essential to our concept of ordered liberty." *United States v. Rocky Mountain Corp.*, 746 F. Supp.2d 790, 800 (W.D. Va. 2010).

an association representing inmates in a California state prison brought a civil rights action, pursuant to 42 U.S.C. § 1983, against prison officials. *Id.* at 196-97. The association of prisoners sought leave to proceed *in forma pauperis*, under 28 U.S.C. § 1915(a), which would have allowed it a dispensation from the obligation to prepay filing fees and other costs in bringing the lawsuit. *Id.*; *see* 28 U.S.C. § 1915(a) ("[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a *person* who submits an affidavit that includes a statement of all assets such . . . that the *person* is unable to pay such fees or give security therefor.") (emphasis supplied). The Supreme Court analyzed the term "person," as used in the *in forma pauperis* statute, to determine whether it extends to artificial entities, such as associations, as required by 1 U.S.C. § 1. *See* 506 U.S. at 201-07. The Court concluded that "[f]our contextual features indicate that 'person' in [28 U.S.C.] § 1915(a) refers only to individuals." *Id.* at 201.

    3. <u>The Court's Inherent Authority to Appoint Counsel</u>

Having concluded that HSA is not entitled to the appointment of counsel under either the Sixth Amendment or the CJA, the Court must determine whether it has the inherent authority to appoint counsel for HSA. Assuming it does, the Court must also decide whether to exercise that authority.

This decision may have a significant impact on the ability of the government to prosecute its case against HSA. After all, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed

counsel." *Rowland*, 506 U.S. at 202 (citing *Osborn v. President of Bank of United States*, 9 Wheat. 738, 829, 6 L. Ed. 204 (1824)); *see also Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970) (" 'The handling of the case in court for the corporation is a matter for its counsel, not for its officers.' " (quoting *Acme Poultry Corp. v. United States*, 146 F.2d 738, 740 (4th Cir. 1982)); *Turner v. American Bar Ass'n*, 407 F. Supp 451, 476 (N.D. Tex. 1975) (citing the "long line of cases" from 1824 to the present holding that a corporation may only be represented by licensed counsel). Accordingly, denial of the request for appointment of counsel would effectively leave HSA unprosecutable. *See Unimex*, 991 F.2d at 549-51 (reversing conviction of a corporation that was unrepresented by counsel at trial).

There appears to be little doubt that the Court has inherent authority to appoint counsel, even when the Sixth Amendment nor the CJA mandate it. "Since its inception the federal judiciary has maintained that federal courts possess inherent powers which are not derived from statutes or rules." *Bothwell v. Republic Tobacco Co.*, 912 F. Supp. 1221, 1225 (D. Neb. 1995) (citing *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)). "Courts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution.' " *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L. Ed. 242 (1821)). More specifically, "[t]he duty of the trial court to appoint counsel under [certain] circumstances is clear . . . and its power to do so,

even in the absence of a statute, can not be questioned." *Powell v. Alabama*, 287 U.S. 45, 73 (1932).

In *United States v. Burk*, the Western District of Texas provides a useful analysis of the court's inherent authority to appoint counsel. *See* 2014 WL 2800759, at *9-10. That court relied, in turn, on the Third Circuit's "most comprehensive and systemic analysis of the inherent powers of a federal court." *Id.* at *9 (citing *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557 (3rd Cir. 1985)). According to the Third Circuit, the court's inherent authority can be divided into three categories: (1) "irreducible inherent authority, [which] encompasses an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power' "; (2) the "powers implied from strict functional necessity" or those " 'essential to the administration of justice' "; and (3) those "powers necessary only in the practical sense of being useful." *Eash*, 757 F.2d at 562-63 (citations omitted).

The court in *Burk* determined that the inherent authority to appoint counsel for indigent corporate defendants is found in the first and third *Eash* categories. *See* 2014 WL 2800759, at *11. In *Burk*, a limited liability company was charged, along with an individual defendant, with wire fraud. *See id.* at *1. The district court ordered the LLC to retain counsel and to enter an appearance within fifteen days. *See id.* at *16. The court also ordered that, should the LLC fail to retain counsel within the time allowed, the court would appoint counsel, leaving to the government to identify funds from which appointed counsel would be compensated. *See id.*

Similarly, in *United States v. Rivera*, the District of Puerto Rico cited its inherent authority in provisionally appointing counsel for three corporate defendants charged with violating the Clean Water Act, should they fail to retain counsel within a specified period of time. 912 F. Supp. at 635, 644-45. In that case, the court determined that the costs of the representation would be paid from corporate assets. *Id.*

Other courts have exercised their inherent authority to appoint counsel on a *pro bono* basis to represent insolvent corporations. *See United States v. Crosby*, 24 F.R.D. 15, 16 (S.D.N.Y. 1959) ("That the court has the capacity to render a valid judgment is not open to question. . . . The court must, therefore, have power to appoint one of its attorneys and officers to appear for the corporation."); *United States v. JB Tax Prof'l Serv's, Inc.*, 2013 WL 6004047 at *5 ("The Court's authority to appoint counsel *pro bono* under these circumstances is an area of unsettled law. Nevertheless, in the interests of justice the Court will order that such an appointment take place." (citations omitted)). In each of those cases, however, the courts relied on volunteer counsel. *See Crosby*, 24 F.R.D. at 16; *JB Tax Prof'l Serv's, Inc.*, 2013 WL 6004047 at *5.

In light of the fact that HSA cannot appear in court without legal representation, and in light of its apparent indigency (given the government's seizure of its assets), the Court will exercise its inherent authority to appoint counsel. The Court is unaware of any attorney volunteering to take the case *pro bono*, however. Nor is it inclined to ask an attorney to represent HSA without compensation, as the United States could pursue any available remedy against HSA in the parallel civil forfeiture case. But, given the parties' stipulation to release seized HSA funds for the purpose of compensating appointed

counsel, the Court need not decide whether to light Diogenes's lamp and engage in a search for counsel willing to represent HSA *gratis*.

4. <u>Funding for Court-Appointed Counsel</u>

It must be noted that a criminal defendant has no constitutional right to use forfeitable property pay for counsel. *See Caplan & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-33 (1989); *United States v. Monsanto*, 491 U.S. 600, 614-16 (1989). Accordingly, HSA has no right to access the seized funds in the related forfeiture action; nor can the Court order the government to release them. The funding of court-appointed counsel for HSA is contingent on the government's willingness to release those funds for this purpose.[7] The seized HSA assets are presently in the custody of the United States Marshal's Service.

The Court has approved the release of $10,000 from PNC Bank Account #4244531076 held in the name of HSA for the purpose of compensating HSA's court-appointed counsel. *United States v. $77,773.46 in Funds from Citizens Bank Account #4536135256, et al.*, Case No. 1:12-cv-495 (J. Maloney) (Joint Stipulation, ECF No. 44; Oct. 21, 2016, Order, ECF No. 45). The sum of $10,000 is the current statutory cap on attorney compensation under the Criminal Justice Act for felony cases.

---

[7]The Court is unaware of any funding for court-appointed counsel, other than that provided by the CJA. Moreover, the Court is disinclined to use taxpayer funds to provide counsel for a corporate entity under the facts and circumstances of this case.

## **Conclusion**

For the foregoing reasons, the Court will enter an order appointing counsel to represent HSA, contingent upon the release of seized HSA assets to be used to compensate counsel at a rate, and under the terms and conditions, set forth under the Criminal Justice Act.  18 U.S.C. § 3006A.


Date:  October 21, 2016                                   /s/ Phillip J. Green
                                                      PHILLIP J. GREEN
                                                      United States Magistrate Judge